### THOMSON–HOUSTON ELECTRIC CO. v. WALKER CO.

(Circuit Court, D. New Jersey. November 8, 1900.)

1. PATENTS—VALIDITY—BRUSH HOLDERS.

Claims 4 and 5 of letters patent No. 462,973, dated November 10, 1891, granted to E. Thomson and W. O. Wakefield, for an "Improvement in Brush-Holders for Dynamo-Electric Machines," are void as lacking patentable novelty, in view of the prior art.

2. SAME—INFRINGEMENT.

Claims 1, 2 and 4 of letters patent No. 394,999, dated December 25, 1888, granted to Edwin W. Rice, Jr., for a "new and useful Brush and Brush-Holder," are valid, and claim 2 has been infringed by the defendant.

(Syllabus by the Court.)

In Equity.

J. Edgar Bull and Edmund Wetmore, for complainant.
Henry B. Brownell and C. E. Mitchell, for defendant.

BRADFORD, District Judge. The bill charges infringement of letters patent of the United States Nos. 394,999 and 462,973, both of which are and were at the time of the alleged infringement thereof owned by the complainant. The answer sets up the usual defences, including anticipation, lack of patentable novelty and non-infringement. Patent No. 394,999 was granted December 25, 1888, to Edwin W. Rice, Jr., and patent No. 462,973 was granted November 10, 1891, to Elihu Thomson and William O. Wakefield. These patents relate to improvements in brushes and brush-holders for dynamo-electric machines, and each of them contemplates the use of a brush of block form, spring-actuated and moving in a slot or socket of a brush-holder; the brush of the earlier patent being composed of copper strips or laminæ, and that of the later patent of carbon and metal or of carbon alone. In the mechanism of each of the patents in suit the end of the brush bears upon the commutator in a direction not far removed from a right-angle and is kept in contact with it through the action of a spring or springs. The employment of brushes of block form substantially at right-angles to that portion of the surface of the commutator against which they are properly spring-actuated, not only allows the commutator to rotate in either direction without necessitating a change in the position of the brushes, but is calculated to insure sufficiently good electrical contact between the commutator and the brushes to convey the current without sparking, burning or other injurious results. To secure such an electrical contact is an object of primary importance.

The charge of infringement has been confined to claims 1, 2 and 4 of patent No. 394,999, and claims 4 and 5 of patent No. 462,973. The claims in suit of the earlier patent are as follows:

"1. The combination, with the brush-holder, of a brush-follower mounted independently thereof, a spring for forcing said follower toward the brush, and an intermediate spring between the brush and follower, as and for the purpose described.

2. The combination, with the brush-follower and a spring for forcing the same toward the brushes, of an intermediate spring attached to the follower and bearing on the brush.   *   *   *

4. The combination, with the brush-holder, B, of a pivoted brush-follower, C, a spring, E, attached at one end to the holder and at the other to the follower, and a brush mounted in the holder and movable independently thereof under the influence of the follower."

In the description of patent No. 394,999 the patentee says:

"My present invention relates to brush devices for collecting electric currents from the commutator-cylinder of a dynamo and for delivering such currents to the commutators of motors, and has reference more particularly to improvements whereby the brushes are readily replaceable and whereby it becomes difficult for unskilled persons to place the brushes wrongly on the commutator, at the same time securing cheapness of manufacture and uniformity of overlap on the commutator. The invention is also designed to permit the commutator to be run in either direction without changing the position of the brushes."

The patents alleged to be anticipatory of or to negative patentable novelty in the Rice invention may be divided into two groups: first, those relating to a trailing brush rigidly clamped in a pivoted holder, and, secondly, those relating to a block form of brush, end-bearing, and movable in a box form of holder. Clearly the former group did not anticipate the Rice invention as covered by claims 1, 2 and 4, or any of them, nor so affect the state of the art as to negative its patentable novelty. It is not so clear that the latter group of patents did not so operate. On careful examination I have failed to find that any of the combinations covered by those claims was strictly anticipated by any of the patents referred to by the defendant. A more serious question is whether the prior art, as disclosed by such patents, does not negative invention or patentable novelty. Before the date of Rice's invention brushes of block form, spring-actuated, moving in stationary brush-holders, and so set as to allow the commutator to run in either direction without change in the position of the brushes, were widely known and used. But it appears that Rice was the first to employ a main or primary spring acting upon a pivoted follower so mounted as to move independently of the brush-holder and also an auxiliary or intermediate spring, under the combined influence of which two springs the motion of the brush in its holder or box was controlled, and its end continuously kept in close contact with the surface of the commutator. It is essential to the satisfactory operation of such mechanism that the end of the brush should be in close and continuous contact with the commutator to permit the free passage of the current. The follower of the Rice patent is pressed forward by the action of a coiled spring attached at one end to the follower and at the other end to the brush-holder; the intermediate or auxiliary spring being

adapted and serving so to equalize and regulate the pressure on the brush as to cause it accurately to respond to the rapid and minute vibrations to which it is subjected. The pressure of the follower through the action of the main or primary spring is transmitted to the brush through the agency of the intermediate or auxiliary spring, attached to the follower and bearing on the top of the brush. The introduction of Rice's intermediate or auxiliary spring, not forming part of the brush, was new and performed a useful function. It certainly was an improvement on mechanism in which a brush of block form was actuated in its holder by only a single spring. The grant of the patent carried with it a presumption of patentable novelty in the invention. I am not satisfied that this presumption has been overcome, and must therefore hold the patent valid so far as the three claims in suit are concerned. But the patented invention is not in any sense of a primary or pioneer character. It is not entitled to any liberality of construction which would not be accorded to ordinary patented improvements on prior devices. The combination of claim 1 of the Rice patent contains the following elements, namely, (1) a brush-holder, (2) a brush-follower mounted independently of the brush-holder, (3) a spring for forcing the brush-follower toward the brush, and (4) an intermediate spring between the brush and follower. The elements of the combination of claim 2 are, (1) a brush-follower, (2) a spring for forcing the brush-follower toward the brush, and (3) an intermediate spring attached to the follower and bearing on the brush. The combination of claim 4 has as its elements, (1) a brush-holder, B, (2) a pivoted brush-follower, C, (3) a spring, E, attached at one end to the holder and at the other to the follower, and (4) a brush mounted in the holder and movable independently thereof under the influence of the follower. While the mechanism manufactured by the defendant and disclosed in exhibit "Defendant's U-Shaped Brush-Holder" or "Defendant's Brush-Holder, A," is claimed to infringe the Thomson & Wakefield patent in suit, it lacks the intermediate spring required by claims 1 and 2 of the Rice patent, nor does it have its spring attached to the follower as required by claim 4 of that patent, and admittedly does not infringe any of these claims. The alleged infringing device, so far as the Rice patent in suit is concerned, is disclosed in exhibit "Defendant's Brush-Holder, B." It contains a brush-holder for a brush of block form and a main spring and an auxiliary or supplemental spring, under the combined action of which the brush is kept in proper contact with the surface of the commutator. The defendant urges, among other things, that the device in question does not infringe for the reason that it has no follower in the sense in which that term is used in claims 1, 2 and 4. This contention cannot be sustained. It is true that in the construction covered by the Rice patent and disclosed in exhibit "Model of Rice Patent in Suit," the follower extends over the box or socket in the brush-holder in which the brush moves, while the follower on the alleged infringing device does not extend so far. But in either case the follower, if acting normally, performs the same function in the same manner. In neither case does the follower itself come into con-

tact with the brush. It is the auxiliary or supplemental spring alone which presses upon the brush and through which the main spring exerts its influence. If in Fig. 1 of the Rice patent the end of the follower, C, were cut off at any point between the socket for the brush and the point of junction of the intermediate spring, c, with the follower, the normal action of the mechanism would be precisely the same as if the follower had not been so shortened. Any difference in its action would necessarily be abnormal and could occur only in case the pressure exerted by the main spring upon the intermediate spring should be sufficient to cause the latter spring to lie flat against the underside of the follower, if not shortened; and in such case the intermediate spring would cease to perform its normal and distinctive function. Nor is the term "follower" a misnomer as applied to the pivoted arm of the alleged infringing device to which the auxiliary or supplemental spring is attached. It moves independently of the brush-holder and follows the end of the brush, transmitting pressure to it from the main spring through the auxiliary spring. There is nothing either in the function of the mechanism or in the language of the claims requiring that the free end of the follower should extend so far as to cover wholly or partially the box or socket containing the brush. The alleged infringing device also contains an auxiliary or supplemental spring attached to the follower and bearing on the brush. It is claimed by the defendant that this spring is not "intermediate" within the meaning of the patent, because it is not so interposed between a follower and the end of the brush that, were it not for the spring, the follower would be in direct contact with the brush. I perceive nothing to justify such a contention. It is, in my opinion, wholly immaterial whether the follower would or would not rest on the end of the brush in the absence of any auxiliary spring. In either case the spring would be intermediate between the brush and the follower, and "an intermediate spring attached to the follower and bearing on the brush." "Defendant's Brush-Holder, B," thus discloses the combination of a brush-follower, a spring for forcing the brush-follower toward the brush, and an intermediate spring attached to the follower and bearing on the brush, and palpably infringes claim 2 of the Rice patent. The combination of claim 1 requires as one of its elements a brush-follower mounted independently of the brush-holder. The brush-follower of the infringing device is not mounted independently of the brush-holder, but, on the contrary, is mounted directly on the holder. The complainant is bound by the language of the claim which is clear and unmistakable. The doctrine of equivalents cannot successfully be invoked to enable the complainant to enlarge the claim plainly limited by Rice to a combination in which the brush-follower is "mounted independently" of the brush-holder. The defendant cannot be held to have infringed claim 1. Nor does it appear that claim 4 has been infringed by the defendant. It is true that the infringing device presents a combination of a brush-holder, a pivoted brush-follower, a spring attached at one end to the holder and at the other to the follower, and a brush mounted in the holder and movable

independently thereof under the influence of the follower. Certainly in the defendant's device the brush is movable independently of the box or socket under the influence of the follower in the same sense as in the mechanism described and claimed in the Rice patent. The follower receives• the pressure of the main spring and communicates it through the intermediate spring to the brush, and the brush may with propriety be said to be movable under the influence of the follower. But Rice in claim 4, referring to the drawings and description, specifically claims a combination consisting, among other elements, of "the brush-holder, B," and "a pivoted brush-follower, C." The brush-holder, B, is so adjusted that the brush held by it cannot be removed unless the holder be swung on its pivot away from the commutator or the latter be displaced. The brush-holder in the infringing device is rigidly attached to the yoke and cannot be swung back from the commutator; the brush being removed from the holder after the pivoted follower is forced back. The "pivoted brush-follower, 'C," is so adjusted that it cannot be forced back sufficiently far to release the brush, and, even if it were capable of being turned further back, the holder is of such construction as not to permit the brush to be removed until the holder itself is swung back or the commutator displaced. In the infringing device, as has substantially been stated, nothing more is necessary to render the brush accessible or removable than the forcing back of the pivoted follower. Rice's patent, not being of a primary or broad nature, the patentee, in so far as he by letter referred in claim 4 to particular elements in the combination shown and described in the drawings and description, confined himself, in the absence of strict equivalency or mere evasion, to the mechanism so particularly pointed out. Such a construction of claim 4 negatives the charge of infringement.

Claims 4 and 5 of the Thomson & Wakefield patent in suit, No. 462,973, are as follows:

"4. The combination of a commutator-brush holder having a socket, a brush movable therein, a brush-pressing arm movable toward and away from such brush, and a spring acting upon said arm to hold it upon either side of a dead-center.

5. The combination of a brush-carrying arm having a box or socket for the brush, a pivoted follower, and a spring acting to hold the follower when swung to either side of a dead-center, as set forth."

In the description the patentees say:

"Our invention aims to secure a holder for the commutator-brushes of a dynamo-electric machine, generator, or motor which permits ready adjustment of the brush-carrying arms bodily toward and away from the commutator, ready access to the brushes, and simplicity of construction in general."

The application for the Thomson & Wakefield patent was filed February 20, 1891, and no date of invention prior to that time is assigned. All the elements entering into the combinations respectively covered by the two claims in suit admittedly were old and well known before the above mentioned date of application; but it is contended by the complainant that the combinations were new and useful and patentable. The combination of claim 4 includes, (1) a

commutator brush-holder and socket, (2) a brush movable therein, (3) a brush-pressing arm, or follower, movable toward or away from such brush, and (4) a spring acting upon the brush-pressing arm to hold it on either side of a dead-centre. The elements of claim 5 are, (1) a brush-carrying arm having a box or socket for a brush, (2) a pivoted follower, and (3) a spring acting to hold the follower when swung to either side of a dead-centre. The invention covered by the Rice patent in suit, not to mention other patented inventions, discloses all the elements, except the last, of claim 4 of the Thomson & Wakefield patent in suit, and all the elements, except the last of claim 5 of the same patent. The Rice invention lacked the spring acting upon the follower to hold it on either side of a dead-centre. This is the last element in claims 4 and 5 respectively of the Thomson & Wakefield patent. But the Rice invention, while not having a spring acting upon the follower on either side of a dead-centre, has a spring acting upon the follower to hold it on such side of a dead-centre as enables it to co-operate with the other elements of the combination when performing its normal function. The narrow question is thus presented whether an adjustment of the follower and the spring attached to it in such manner as to permit the spring to hold the follower on either side of a dead-centre instead of only on one side of a dead-centre, involved invention or patentable novelty. The main spring in the Thomson & Wakefield device performs its primary or principal function when acting upon the follower on one side of a dead-centre in such manner as to cause the follower through the agency of the intermediate spring to hold the brush in contact with the surface of the commutator. The secondary function of the main spring is to hold the follower on the other side of the dead-centre in such position that the brush conveniently may be handled or removed. The latter function is like that of the main spring in connection with the catch shown in the mechanism covered by patent No. 381,394, dated April 17, 1888, issued to O. P. Loomis, in the description of which the patentee says:

"When it is desired to withdraw the brush from the commutator, it is only necessary to draw the clamp, F, back and put the hook, K, into the notch, c, the tension of the spring, b, serving to hold the hook in said notch, so that the clamp and brush will remain retracted until the hook, K, is raised, when the tension of the spring, b, will immediately throw it into operative position against the commutator, H."

But the use of a spring to operate successively on either side of a dead-centre was well known, not only in knives, trunks and various mechanical contrivances, but in dynamo-electrical mechanism, prior to the invention of Thomson & Wakefield. In the description of patent No. 387,010, granted to Albert Schmid, dated July 31, 1888, the patentee says:

"When it is desired to raise either brush from the collector ring or commutator, the box carrying the same is turned backward, as shown in Fig. 8, and the link-connection between the box and the rod, n', permits the parts to assume the position shown in Fig. 8, holding the brush away from the collector ring or commutator. As there are two brushes for each collector ring or commutator, either brush may be thus temporarily removed without interrupting the operation of the machine."

Claims 2 and 6 of the patent last named are as follows:

"2. The combination of a supporting-frame for commutator or collector brushes, an-insulated rod carried thereby, two brush-clamps, a sleeve carrying the same supported upon said rod, a tension device for each clamp normally pressing the corresponding brush against its commutator, and a spring pressing the brush toward or from the ring, accordingly as it is moved to one side or the other of the center of support of the brush. * * *

6. The combination, with an electric generator or motor and its revolving commutator or collector, of a movable brush-holder, and an eccentric-spring exerting stress upon the brush-holder in one direction or the opposite accordingly as the spring is moved from one side to the other of the center of support of the brush-holder."

In the description of patent No. 399,404, granted to Daniel Higham, dated March 12, 1889, the patentee says:

"The brushes are caused to bear upon the commutator-surface by means of curved springs, s, hooked at the ends into loops, 1, one in each case upon the clamp and the other upon the adjustable holder. This construction of spring permits the brush to be thrown back to the position indicated by dotted lines in Fig. 1, so that when it is turned back to that position it will stay there until it is intentionally returned to bear upon the segments."

While the phrase "dead-centre" is not used, a dead-centre is clearly shown and described. It is true that in the mechanism covered by the three patents last mentioned, the brush was not of block form as in the device of Thomson & Wakefield. But this circumstance is, in my opinion, wholly immaterial. The earlier patents showed mechanism containing a spring bearing on either side of a dead-centre, the primary function of the spring being to hold the brush in contact with the commutator, and its secondary function being to hold the brush at a distance from the commutator where it conveniently could be handled. So far as the point under immediate discussion is concerned, it is unimportant that the spring in the earlier patented devices was attached to the brush-holder and not to the follower. It operated in those devices as in that of Thomson & Wakefield on either side of a dead-centre to keep the brush in contact with the commutator or to allow easy handling of the brush as might be desired. Patent No. 423,309, granted to J. C. Chamberlain, dated March 11, 1890, shows a brush of block form held in contact with a commutator under the influence of a pressure-arm or follower actuated by a main spring acting on one side of a dead-centre. No mechanic skilled in the art, having before him the patented devices of Rice, Loomis, Higham, Schmid and Chamberlain, and devising and constructing the Thomson & Wakefield mechanism, could be considered as an inventor entitled to the benefit of the patent laws. In view of the prior art the device of Thomson & Wakefield was wholly wanting in patentable novelty.

The bill must be dismissed as to patent No. 462,973, and sustained as to claim 2 of patent No. 394,999. Let a decree be prepared in accordance with this opinion.